Good morning and welcome to the Ninth Circuit. Before we begin, Judge Piazza and I would like to welcome and to thank Judge Cho Groves from the International Court of Trade who's sitting with us several days this week. We're glad to have you, grateful for your presence and for your help. Thank you. Thank you so much. Happy to be here. A little bit of housekeeping. The case Jari v. Barr has been removed from calendar. The case United States v. Wynn has been submitted on the briefs. And the case Magana v. Doordash, we have vacated the oral argument pending the possibility of settlement. Which leaves us three argued cases, the first of which, Yurok Tribe, and when you're ready, counsel. Good morning, Your Honors. May it please the Court. Daniel Cordalis on behalf of the Yurok Tribe, plaintiff and appellant in this case. I'd like to reserve two minutes of time for rebuttal. Okay. I will try to help, but the clock counts down. Okay. Thank you. For the Yurok Tribe, the highest expression and most important expression of their sovereignty is through their careful management of the salmon fishery within the Yurok Reservation. A salmon fishery that's imperiled and faces numerous existential threats. That's why the tribe is here today, to protect the tribe's authority to manage that salmon fishery and to protect the salmon resource. Defendant Dowd is not a Yurok Tribal member. Rather, he is a Rezagini-Rancheria Tribal member who has repeatedly been cited for fishing illegally within the Yurok Reservation, who refuses to stop. This morning, I want to discuss two reasons why the district court erred in dismissing the case and finding that the Rezagini-Rancheria, an absent party here, was actually a required party. First, complete relief can be afforded between the Yurok Tribe and Defendant Dowd in this narrow case. What's the relief you're seeking against Mr. Dowd? We are seeking a declaration of the rights between Defendant Dowd and the Yurok Tribe. And what would that declaration say? The declaration would be the fact that Defendant Dowd's election in the Hupa Yurok Settlement Act precluded his ability to fish without a state license or a Yurok authorization. That's it? That's it, yes. So you're seeking relief only against him in his personal capacity? Yes, Your Honor, that's true. So you're not seeking to try to bind the Rancheria? No. No, Your Honor. We are not appealing that decision of the district court. We respect the Tribe's sovereign immunity. They asserted in the district court that that case was dismissed. The claim was dismissed as against them, and we're not appealing it. In arriving at such a declaration, would the district court have to make any determination that the Yurok has an exclusive fishing right? No, it wouldn't have to. Really, all we need the court to look at — Would you be asking for such a determination from the district court? We wouldn't be asking for that, no. Really, our only — the only thing we would want to look at is the effect of Defendant Dowd's election in a Hupa Yurok Settlement Act and what the effect of him signing that and taking the buyout underneath the Hupa Yurok Settlement is against his fishing rights versus the Yurok Tribes. So you're not challenging the Rule 19 decision with respect to the broader question as to whether or not there's a fishing right as between the Tribe and the Renteria? No, we're not. We're not appealing anything that has to do with the Renteria's sovereign rights, no. Well, no, this is a different question. It's the Rule 19 ruling that says you look as though you're trying to establish the question as to the fishing rights between the Yuroks and the Renteria. Right. Your Honor, I think it's kind of a — it is a central question, actually, in this case, in that the Renteria has asserted that right to be included in the Rule 19 analysis. I mean, the Renteria has asserted that they have an off-reservation, federally reserved fishing right within the Yurok reservation. Right. And I'm trying to figure out if you think that this suit is a proper vehicle for resolving that question. There's a narrower question, of course, the one you've been addressing more explicitly. That is to say, does Mr. Dowd have the right, given that he, in your contention at least, has signed the waiver? Right. But the broader question as to the rights between the Tribe and the Renteria, you say that's not actually — you're not actually seeking to resolve that in the district court? We're not. Not at this time, no. I think we had — initially, when we initiated the case years ago, we had thought maybe we would get there between the parties and we would agree upon that. But that's not the disposition of the case right now. Yeah. Is it relevant that Mr. Dowd is an officer of the Renteria? Not for this case, no. No? We're bringing this case in this individual capacity and not as an official of the Tribe, of the Renteria. So to these points, we believe — we're arguing that complete relief can be afforded because we are looking for just a declaration of the rights between the two. The Hoopah-Yurok Settlement Act was very clear in its consequences for anyone that took a buyout. And its language was that that person who took a buyout shall not thereafter have any interest or right whatsoever in the property, resources, or rights within or appertaining to the Yurok Tribe or the Yurok Reservation. And that includes the salmon fishery. Let me ask you, what do you get from this declaration if you prevail? We get clarity between the two parties. And what the Defendant Dowd has been cited repeatedly within the Yurok Reservation, and it's — we haven't been able to resolve this issue. It's been an unclear conclusion of what his rights are. So we get a clear declaration by the Court of really what the effect of his Hoopah-Yurok Settlement election was. This is not in front of us, but as a matter of curiosity, how many members of the Rancheria have signed agreements comparable to the agreement that Mr. Dowd has signed? I'd need to check, but I think it's probably in the 20 to 30 range. So with respect to those people, then, the resolution of this case as to Mr. Dowd will, in effect, resolve the rights of those people. It may at the later time if we have — if that situation presents itself, if we have those people fishing. To the second point, and this is getting at your question, Judge Fletcher, a little bit, really, what is the Rancheria's asserted legal protected interest? Again, they're claiming an off-reservation Federal Reserve fishing right within the Yurok Reservation. And we believe this is a frivolous claim. We believe it's unsupported in the law. I think you just told us that you're not asking us to resolve that claim. That's true. But the second prong of 19A looks at whatever the absent party asserts as a protected interest. And this Court has been clear that you can't merely claim an interest, but you have to look at the practical circumstances, the facts of the case to see, to really examine what that interest is, to make sure it is — falls within or under Rule 19. And so we — the assertion of this off-reservation is right. It's a novel claim. We don't have to resolve that to — to — to rule in your favor, do we? You don't have to. No, you don't. Why would we? You would — you could resolve it only to the effect that you would — that to determine that they're not a required party under 19A. The second prong of it actually asks if there's a legally protected interest at stake. And so that's — that's — that's why we are making this claim, too. But just on that point, and we just want to be clear, because that — that claim underscores a lot of what this case really is about and the assertion for complete relief, which a district court found they couldn't afford complete relief because of this — of this potential implication of this right. I mean, off-reservation reserved right — well, off-reservation rights arise through treaties, expressed treaty language, statutes, or congressionally ratified agreements. And there just — there isn't any of that in this case. There's no statutes. There's no treaty. The rancher actually did not cede any lands to the United States, which would normally give rise to an off-reservation right. So this is a very different circumstance here, whereas the Yurok fishing rights within this reservation are just — are well-founded. We've had cases for — for decades affirming the right of the Yurok tribe to fish on the reservation. Okay. You're down to just about two minutes, if you want to save. Just in conclusion, we factually, practically and legally, the ranchery is not a required party under Rule 19a. And we ask this Court to first decision the district court so we can — this case can continue against the Yurok tribe and defendant Dowd. Okay. Thank you. Good morning, Your Honors. My name is Les Marston. I'm here representing the Rizzaghini Rancheria and Gary Dowd. And I'm with the law firm of Rapport and Marston. There is absolutely no doubts. Eight times in their brief, Rizzaghini — I mean, Yurok asserts that they have the exclusive right to authorize and regulate Rizzaghini fishermen's fishing in the Klamath River. The Rizzaghini Rancheria claims a reserved right to fish that is protected by federal law and arises from the creation of the Klamath River Reservation and the creation of their own Rizzaghini Rancheria. The rancheria is a little 100-acre parcel of land that lies within the boundaries of the original Klamath River Reservation and now the Yurok Reservation. Would you like to get that legal question resolved? Well, that's — but that's not the issue before the Court. Well, I'm asking you a different question. Would you like to get the legal question resolved, what the rights are for the rancheria vis-à-vis the Yurok and the salmon? We would like to sit down with the Yurok. The answer to that question is yes. Would you like it to be resolved by a court? We don't think a court is an appropriate place to resolve that issue. Okay. We think that the way — But even though it's a legal question, you don't want a court to resolve it? Ultimately, if a court has to resolve that question, so be it. But we don't — we think that what responsible governments do, as Rizzaghini did in this case, where we've asked the Yurok tribe not once, not twice, but three times to sit down and, as sovereign tribal governments, co-manage the resource to ensure its protection and its sustainability. Rizzaghini has a fishing ordinance. They've been comprehensively regulating the resource before the Yuroks organized or the Yuroks had a reservation. The Rizzaghini tribal members have been fishing both on the reservation — and you have to remember that the Klamath River flows through the Rizzaghini reservation. And so Yurok is asserting it has the right to regulate Rizzaghini fishermen while they are within the boundaries of their own reservation fishing. Now, it's true — Given the resistance of the Yuroks to the claim, it sounds as though government-to-government negotiation hasn't worked out very well. You still don't want to go to court to get that resolved? Well, the reason that it hasn't worked out very well, Your Honor, is because Yurok wants to litigate it. They want to take their best shot at trying to terminate. But it sounds as though you don't want to litigate the question. At this point, Your Honor, I mean, I haven't — to be honest with you, I haven't sat down with my clients and posed that question to them. What my clients have authorized me to do was to file a motion to dismiss on the grounds that the Rizzaghini Rancheria enjoys sovereign immunity from suit, cannot be joined in this litigation, and they're required to be joined. So why can't the suit go forward just against Mr. Dowd in his individual capacity only on the claim — on the basis of the claim that he signed, you know, the waiver? He took — Okay. So let's say — He took, what was it, $15 — he accepted $15,000 to give up any individual rights that he has to fish in the — Well, for — for — well — The reservation. But what was he paid for, and what rights does he have? Well, that's what the — that's what the litigation would be, would attempt to resolve against him. But does anyone doubt that if Yurok started to litigate against Gary Dowd, that he would assert as a defense that he has been authorized, licensed, and regulated by the Rizzaghini Rancheria, and he has the privilege to fish based upon their reserve right that they have authorized him to exercise? Why do you have to resolve that question to enforce the — the agreement? Because — Or the affidavit, whatever it was. Well, let me — let me answer your question, Your Honor. But you don't really address that in your brief. Well, let me address it now, because I want to address it. Well, it would have helped if you would have discussed it in your brief. Well, it's not — it's — it's not an issue. It's not a fact that the district court needed to apply, or needed to look to, to apply the Rule 19 A and B standards to determine whether or not the tribe was a required tribe, and whether or not the case could go forward in equity and good conscience in the tribe's absence. Gary Dowd was paid money so that he would not be an enrolled member of the Yurok tribe, would not claim an interest in any lands owned by the United States of America for the Yurok tribe, and would not exercise a Yurok fishing right. He's doing none of those things. He has no rights. Only the Rizzaghini Rancheria has a federally reserved right. They license him and authorize him. They give him the privilege. So he took — he took the $15,000 and continued to fish. Under not a Yurok fishing right, a Rizzaghini fishing right. So what was the whole purpose of Congress adopting that provision in the Settlement Act — or in the Act? To make sure that no Yurok, such as Gary Dowd, claimed an interest in Yurok lands and in Yurok fishing rights. So the question is — Not Rizzaghini lands and not Rizzaghini fishing rights. Well, it sounds as though you and the Yuroks have a different reading of what this agreement for $15,000 was. And if you're right, the district court will say you're right. But if they're right, it sounds as though he gave up whatever fishing rights he might have had, period. They may be wrong, but that's their argument. And that's exactly my point. When they say that Gary Dowd's been cited three times for illegally fishing, our position is he wasn't illegally fishing. He had a license for the Rizzaghini Rancheria. But my question to you is why cannot that question, the effect of the agreement, be resolved without deciding the rights of the Rancheria? That is to say, if it turns out that the Yuroks are right — and I don't know the answer to that question. If it turns out the Yuroks are right, whether or not the Rancheria has fishing rights, he's given up his personal fishing rights. That's their argument. Well, but again, your — They may be wrong, but that's their argument. Understood. And that's why joinder of Rizzaghini is required, because — No. With all due respect, it seems to me that if they are right and if that's the narrow question to be decided, I don't think we need the Rancheria as a party, because this is his own personal right that he has given up, if they're right. But Gary Dowd has no rights. These are sovereign rights. These are the rights of the government. It's a tribal right, and it's the right to enact their own fishing laws and to govern themselves on their reservation. Gary Dowd, when he goes out to fish, he exercises a Rizzaghini reserved fishing right. And the only reason he can fish is because Rizzaghini has authorized him to do so and regulates him. So if Yurok — and again, you have to look at their brief. What they're claiming is they have the exclusive right to regulate fishing of Rizzaghini fishermen on the Klamath River. And if they litigate that case against Gary Dowd, he's going to assert as a defense that he's not exercising a Yurok right to fish and that the buyout didn't extinguish his Rizzaghini right to fish that Rizzaghini authorizes him to do. And so as a result, the district court is going to have to address the issue of does Rizzaghini have a reserved fishing right, and can they authorize Gary Dowd to go into the river and fish. And if they rule against Mr. Dowd, that's an extinguishment or a termination of Rizzaghini's fishing rights. And it most certainly will subject Gary Dowd to conflicting judgments because he'll then go and get his fishing license from Yurok and go into the river and fish. And you don't think that Rizzaghini is going to cite him for violating Rizzaghini's fishing ordinance? A fishing license is not a judgment. That is to say, you said he'll have conflicting judgment. He'll have a fishing license, but he won't have a judgment. Well, but how else does the district court determine whether Gary Dowd can go in and fish without a Yurok license, other than to do — My point is only that you said license and what you — you said judgment and you said — but the only thing you said was license. They're not the same thing. Agreed, Your Honor. If that was my mistake, I apologize. But the point being is if you look at the Rule 19 factors, this is a classic case. And this Court, this Ninth Circuit, addressed this exact same issue when the Suquamish sued the Suquamish tribal officials and claimed that they had the right to regulate the Suquamish in Forsa — in Suquamish Tribe v. Forsa. That case is directly on point. Was there a statute like this involved in that case? There was a treaty involved. No, I'm asking, was there a statute? No, there was no statute, but it doesn't make any difference. All right. And the reason it doesn't make any difference is because 40 years ago I stood in front of this very Court and argued Blake v. Arnett, and this Court — arguing that the Yuroks had the right to fish in the Klamath River, and this Court held it doesn't matter whether a reservation is created by treaty, statute, or executive order. It's all Federal law under the Supremacy Clause of the United States, and the rights that attach are the same. So whether or not Rizagini is exercising a reserve fishing right based upon statute or whether it's exercising a reserved right based upon treaty, there is no difference. It's still a Federally protected right, and under the Supremacy Clause of the United States Constitution is the supreme law of the land. And therefore, this Court's previous decision in — in Suquamish v. the — Frosman is directly on point. There — those — the members of the Suquamish Tribe were going out. They had been licensed by Suquamish. They were hunting and fishing in territory that the Suquamish claimed was their territory reserved exclusively to them under the treaty. But in that case, there was no separate agreement by an individual member that, at least by the argument of one side or the other, had given up whatever rights he might have been able to exercise as a tribal member. That is correct. But — but the — your key words, listening to what you just said, Your Honor, was giving up whatever rights he had. As a tribal member. As a tribal member. Gary Dowd did not give up any rights that he has as a tribal — as a tribal member of the Rizzagini Rancheria. Well, that's the question. That's — that's right. That's exactly what's at stake here under this statute. Exactly. And so to litigate that right in Rizzagini's absence, okay, what — the Court has to determine whether Rizzagini's claimed Federally reserved right exists, whether or not Dowd is exercising that right as opposed to any rights that were purchased or — or he was paid for, and — and — and he's not capable of representing Rizzagini's interests in this, because — Well, I guess I get that part. But he's representing his individual interests, though. He — but, again, I — I'm splitting hairs here, but it's a hair to split. Because you don't — as a citizen of the state of California, you don't have a right to drive a car. It's a privilege. It's a sovereign right of the state of California to license and regulate you, okay? Gary Dowd has no rights. Whether — whether it was a UROC fishing right that he was paid for or whether it's a Rizzagini right, he only has what the sovereign government authorizes him to do. And therefore, he's not in a position — is a — is a citizen of the — of the United States in a position to defend the sovereign rights of the United States in federal court? The same is true for a tribal citizen and its government. He has no rights. The right is a tribal right. He — it's — it's a sovereign right to enact — for the Rizzagini to enact their own laws and be ruled by them. And again, we're talking about the UROCs claiming that they can regulate his right both on the Rizzagini Reservation and off, because the Klamath River flows through the Rizzagini Rancheria. Okay. I think we've got the argument. You're about three minutes over time. All right. Thank you, Your Honor. Thank you. Your Honor, just two points. The Skokomish decision really doesn't bear on this case. In that case, there was one treaty signed by four tribes that guaranteed each equal off-reservation hunting rights. It was a right they all shared equally on nobody's land. It was all open and unclaimed land. Here we are directly on — No, no, no. It wasn't tribal land. It was not tribal land. It was somebody's land. It was somebody's land, right. It was tribal land at one point. And just to reinforce the question, complete relief can be afforded here. We don't have to get to the exclusive right question, the exclusive authority question, whether or not the UROC tribe has it. The law suggests that for years that tribes do have exclusive tribal rights on their reservations, but this Court need not get there. And again, UROC seeks this declaration of what the effect of the Hupa-UROC Settlement Act was on defendants' — Dowd's — individual rights. If you have other questions, that'll be it. Okay. Thank you very much. Thank both sides for their arguments. The case of the UROC tribe versus Resignini Rancheria and Gary Dowd submitted for decision.
judges: W. Fletcher, Paez, Choe-Groves